UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEVIN TONEY,<br><br>**Plaintiff,**<br><br>v.<br><br>KILOLO KIJAKAZI,<br>**Acting Commissioner of Social Security,**<br><br>**Defendant.** | No. 1:21-cv-00557-ZMF |

### MEMORANDUM OPINION

Plaintiff Kevin Toney moves to reverse a decision by Defendant Commissioner of the Social Security Administration ("Commissioner" or "SSA") adopting the findings of an Administrative Law Judge ("ALJ") and denying Mr. Toney's application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIBs"). *See* Pl.'s Mot. J. Pleadings at 1, ECF No. 18 [hereinafter "Pl.'s Mot."]. Mr. Toney claims that the ALJ committed reversible error at steps three, four, and five in the five-step process used by the SSA to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920(a)(4); *see also* Pl.'s Mot. at 12–13, 16–17, 23. Mr. Toney further claims that the for-cause removal restriction on the Social Security Administration Commissioner is unconstitutional and renders the ALJ's decision constitutionally defective. *See* Pl.'s Mot. at 11.

On September 14, 2021, by consent of both parties, United States District Judge Royce C. Lamberth referred this matter to a magistrate judge for all purposes. *See* Order Referring Case to a Magistrate Judge, ECF No. 12. Pending before this Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment of Affirmance. *See* Pl.'s Mot.; Def.'s Mot.

1

J. Affirmance, ECF No. 19 [hereinafter "Def.'s Mot."].  Having considered the parties' submissions and the Administrative Record,[1] and for the reasons set forth below, the undersigned will DENY the Plaintiff's Motion for Judgment on the Pleadings, and GRANT the Defendant's Motion for Judgment of Affirmance in an accompanying order.

I.    **BACKGROUND**

   A.    Statutory Framework

The Social Security Act (the "Act") provides DIB for "disabled" individuals.  42 U.S.C. § 423(a)(1).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Id.* § 423(d)(1)(A).  The impairment must be severe and must render the individual unable to perform both "previous work" and "any other kind of substantial gainful work which exists in the national economy."  § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

The SSA uses a five-step sequential process to determine whether a claimant is disabled.  *See* 20 C.F.R. § 416.920(a)(4).  If a determination can be made at any step, the SSA does not go on to the next step.  *See id.*  The burden of proof is borne by the claimant at each of the first four steps and switches to the Commissioner at step five.  *See Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004) (citing 20 C.F.R. §§ 404.1520, 416.920).  At step one, the claimant must demonstrate that he is not presently engaged in "substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  At step two, the claimant must show that he has a "severe" medically determinable impairment that "significantly limits [his] physical or mental ability to do basic work

---

[1] The Administrative Record consists of ten exhibits. *See* ECF No. 7. For ease of reference, citations to the Administrative Record will refer to "AR" and cite to the consecutive page numbers provided in the lower right-hand corner of each page.

activities." *Id.* § 416.920(a)(4)(ii).  At step three, the claimant must show that his impairment—or combination of impairments—"meets or equals" the criteria of an impairment listed in the SSA Commissioner's regulations.  *Id.* § 416.920(a)(4)(iii).  If the claimant's impairment does not meet or equal a listed impairment, the Commissioner proceeds to step four, which requires the Commissioner to determine the claimant's residual functional capacity ("RFC") and whether, in light of the RFC, the claimant can still perform any relevant past work.  *See id.* §§ 416.920(a)(4)(iv), 416.920(e)–(f).  If the RFC indicates that the claimant cannot engage in past work, then at step five, the ALJ looks to the claimant's RFC, age, education, and past work experience to determine if he can perform "other work" in the national economy.  *See id.* §§ 416.920(a)(4)(v), 416.920(g).

    B.    <u>Factual Background</u>

        1.    *Mr. Toney's Testimony and Reports*

Mr. Toney previously worked as a housekeeper, cleaner, commercial groundskeeper, kitchen helper, and material handler.  *See* AR 65.  He had not engaged in substantial gainful activity since June 1, 2017, the alleged disability onset date.  *See* AR 16.  According to Mr. Toney, he did not have trouble following directions if they are written in elementary language.  *See* AR 57. Further, he could follow spoken instructions if he could hear them with his hearing aids.  *See* AR 298.  Mr. Toney lived with a friend who did the work around the home such as cooking, cleaning, laundry, and shopping.  *See* AR 61.  Mr. Toney would go to the store with his friend, who carried the bags home from the store.  *See* AR 61.  He did not drive and had not taken any long trips recently.  *See* AR 62.  Mr. Toney testified that on an average day he watched TV, moved from the bed to a chair, tried to eat and take his medications, and slept.  *See* AR 62.  He could stand for ten or fifteen minutes before having to sit back down.  *See* AR 63.  Mr. Toney stated that he could

3

walk a block without having to stop. *See* AR 63. However, he had previously indicated that he could only walk three to five feet without needing to stop and rest. *See* AR 298. Mr. Toney walked with a cane for support, but the cane was not prescribed by a doctor. *See* AR 298–99.

      2.      *Medical Evidence*

Since June 2017, Mr. Toney has been diagnosed with recurrent diverticulitis. *See* AR 768. On February 24, 2018, a chest x-ray revealed that Mr. Toney had mild chronic obstructive pulmonary disease and a bullet fragment lodged in his upper back. *See* AR 662. On February 28, 2018, Mr. Toney underwent multiple procedures to treat his diverticulitis with abscess formation without complication. *See* AR 758–59. On July 31, 2018, a hip x-ray indicated that Mr. Toney did not have arthritis. *See* AR 487.

On July 31, 2018, a consultative examiner, Dr. Elizabeth Nolte, evaluated Mr. Toney. *See* AR 488. Dr. Nolte determined that Mr. Toney had a post gunshot wound to the upper back, diverticulitis, chronic back pain, chronic abdominal pain, status post partial colectomy, status post open reduction and internal fixation of right mandible, and status post open reduction and internal fixation of right radius and ulna. *See* AR 488. Dr. Nolte noted that Mr. Toney had a "waddling" gait, could walk on his heels, and his cane did not appear to be medically necessary. *See* AR 486. Dr. Nolte tested Mr. Toney's extremities and found that Mr. Toney had 5/5 strength in his extremities and no muscle atrophy. *See* AR 487. Mr. Toney also had 4/5 grip strength bilaterally, a strong pinch bilaterally, and he could zip, button, and tie. *See id.* Dr. Nolte listed Mr. Toney's prognosis as fair and noted that he had moderate limitations in walking, bending, reaching, and hearing. *See* AR 488.

On November 10, 2018, Psychologist Sonya Clyburn saw Mr. Toney for a consultative examination. *See* AR 525. Mr. Toney indicated to Dr. Clyburn that he completed twelfth grade

4

and was in special education due to his attention-deficit/hyperactivity disorder ("ADHD") and academic slowness. *See* AR 525. Mr. Toney reported one previous psychiatric hospitalization for thirty days when he was in middle school, but he was unaware of the reason and date of the hospitalization. *See* AR 525. Mr. Toney reported having short and long-term memory deficits, concentration difficulties, word finding difficulties, receptive language deficits, and difficultly learning new material, planning, organizing, and sequencing. *See* AR 526.

Dr. Clyburn's diagnosed Mr. Toney with mild intellectual disability, ADHD, mild recurrent major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder. *See* AR 529. Dr. Clyburn identified Mr. Toney's self-reported medical diagnoses as asthma, diverticulosis, history of broken bones, hearing loss, back pain, and stomach pain. *See* AR 529. Dr. Clyburn listed Mr. Toney's prognosis as fair and recommended psychotherapy, psychiatric intervention, medical follow up and evaluation, vocational training, and pain management. *See* AR 529.

In March 2019, at a follow up appointment at Howard University Hospital, Mr. Toney reported doing well. *See* AR 895. The provider noted that Mr. Toney continued to have intermittent rectal bleeding and minimal abdominal pain, but he had no diarrhea, weight loss, dysphagia, fever, nausea, or vomiting. *See* AR 895.

C.   Procedural Background

On March 16, 2018, Mr. Toney applied for DIBs and SSI. *See* AR 239, 243. On September 21, 2018, the SSA denied Mr. Toney's DIBs and SSI applications. *See* AR 168–71. On October 15, 2018, Mr. Toney requested reconsideration. *See* AR 176–77. On December 7, 2018, the SSA affirmed the September 21, 2018 denial after reconsideration. *See* AR 183–89. On January 5, 2019, Mr. Toney requested a hearing before an ALJ. *See* AR 190–91.

On November 21, 2019, ALJ Raghav Kotval held a hearing on Mr. Toney's claims. *See* AR 34. On January 15, 2020, ALJ Kotval affirmed the denial of benefits. *See* AR 14–28. At step one, the ALJ found that Mr. Toney had not engaged in substantial gainful activity since the alleged disability onset date. *See* AR 16. At step two, the ALJ found that Mr. Toney had the following severe impairments: "gastritis and duodenitis, asthma, fracture of bones, hearing loss, arthritis, affective mood disorder, and anxiety disorder." AR 16. The ALJ further determined that Mr. Toney had a mild limitation in interacting with others and the following moderate limitations: understanding, remembering or applying information; concentrating, persisting, or maintaining pace; and adapting or managing himself. *See* AR 17–19.

At step three, the ALJ determined that Mr. Toney "d[id] not have an impairment or combination of impairments that meets or medically equals the severity of" Listings 1.02 (dysfunction of major joints), 5.08 (weight loss due to digestive disorder), 2.10 (hearing loss), or 3.03 (asthma). *See* AR 17. Further, the ALJ found that Mr. Toney's mental health impairments did not meet or medically equal the criteria of Listings 12.04 and 12.06. *See* AR 18. The ALJ found that the "Paragraph B" criteria were not satisfied "[b]ecause the claimant's mental impairments d[id] not cause at least two 'marked' limitations or one 'extreme' limitation." AR 18–19. The ALJ also determined that the evidence did not satisfy the "Paragraph C" criteria. *See* AR 19.

At step four, the ALJ found that:

[T]he claimant has the [RFC] to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except he can occasionally climb ramps/stairs; climb ladders, ropes, or scaffolds; balance; stoop; kneel; crouch; and crawl. He can only occasionally be exposed to moving mechanical parts and unprotected heights; pulmonary irritants and poor ventilation; concentrated odors, fumes, dusts, and gases; and vibration. He can only work in a moderately loud work environment or quieter. He is limited to simple, routine tasks, not at a production pace but performed in two-hour increments following which the claimant would need a

>break of 10-to-15 minutes. That break can be accommodated during normal work breaks. He can further only occasionally adjust to changes in workplace settings.

AR 19–20.  The ALJ consequently determined that Mr. Toney was capable of performing his past relevant work as a housekeeping cleaner.  *See* AR 26.

At step five, the ALJ determined that given Mr. Toney's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, there were additional jobs in sufficient numbers in the national economy that he could perform, including Ticket Seller, Toll Collector, and Order Caller.  *See* AR 26–28.  The ALJ determined that if Mr. Toney needed the assistance of a cane for ambulation, he could perform the jobs of Ticket Seller, Toll Collector, and Order Caller, but not his past relevant work in housekeeping.  *See* AR 28.  In reaching the conclusions of steps four and five, the ALJ relied on the testimony of impartial vocational expert, Charlotte G. Dixon.  *See* AR 14.

## II.  LEGAL STANDARD

This Court may not reweigh the evidence; it may only determine whether the ALJ's determination was based on substantial evidence and applied the relevant legal standards.  *See Butler*, 353 F.3d at 999.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)).  Substantial evidence is a deferential standard that "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence."  *Id.* (quoting *Fla. Mun. Power Agency v. Fed. Energy Regul. Comm'n*, 315 F.3d 362, 365–66 (D.C. Cir. 2003) (internal citation omitted)).  On review, the "plaintiff bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied."  *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015) (quoting *Muldrow v. Astrue*, No. 11-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012)).

### III.   ANALYSIS

#### A.   The ALJ's Evaluation of Listing Criteria

The ALJ "specifically identifie[d] Listing[s] [1.02, 5.08, 2.10, 3.03, 12.04, and 12.06], describe[d his] reasons for concluding that Plaintiff's condition d[id] not meet or medically equal th[ose] Listing[s], and [went] on to discuss the evidence in the record in significant detail," *Conway ex rel. Tolen v. Astrue*, 554 F. Supp. 2d 26, 35 (D.D.C. 2008), including medical records, a disability report, function reports, and consultative examiner reports, *see* AR 17–18.  There was no requirement "that the ALJ provide an exhaustive point-by-point breakdown of each and every listed impairment." *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018).

First, the ALJ found that "[t]he evidence d[id] not show that the claimant's dysfunction of major joints [met] Listing 1.02. The claimant's records d[id] not indicate that he suffer[ed] from an inability to use the bilateral upper extremities to perform gross and fine manipulation, nor d[id] he suffer from an inability to ambulate effectively as result of joint dysfunction."  AR 17; *cf. Campfield v. Comm'r of Soc. Sec.*, 228 F. Supp. 3d 87, 108 (D.D.C. 2016) (finding that the plaintiff did not have a Listing 1.02 impairment because the record did not indicate a bilateral limitation in the upper extremities or "an extreme limitation of the ability to walk").  The ALJ's finding was supported by Dr. Nolte's consultative examiner report concluding that Mr. Toney's cane was not medically necessary, that Mr. Toney could walk without the cane, and that Mr. Toney retained 5/5 bilateral strength in his extremities.  *See* AR 486–87.  The ALJ's reliance on these facts was appropriate.  *See Mann v. Astrue*, 284 F. App'x 567, 571 (10th Cir. 2008) (affirming ALJ's determination that, based on the consultative physician's findings and contrary to the plaintiff's testimony, the plaintiff could walk without a cane).

8

Second, the ALJ found that "[t]he severity of the claimant's mental impairments, considered singly and in combination, d[id] not meet or medically equal the criteria of [L]istings 12.04 and 12.06." AR 18. In doing so, the ALJ considered whether Listings 12.04 and 12.06 Paragraph B criteria were satisfied. *See* AR 18. The ALJ's determination was supported by Dr. Clyburn's consultative examiner report finding that Mr. Toney only had moderate and mild mental health limitations, while Paragraph B criteria required extreme and/or marked impairments. *See* AR 18–19, 525–29. The ALJ's reliance on these facts was appropriate. *See Jones v. Soc. Sec. Admin. Comm'r*, 857 F. App'x 587, 592 (11th Cir. 2021) (upholding the ALJ's determination that the plaintiff only had moderate mental health limitations based upon the consultative psychologist's opinion and corresponding records).

Finally, neither testimony from Mr. Toney or the medical records indicated a severe impairment of the spine or neurological function.[2] *See* AR 343, 369, 408, 495, 535, 541, 770, 889, 898, 928, 943, 959, 968, 974, 985 (treatment provider records showing no severe impairments of the spine or neurological function); AR 44–63 (Plaintiff's testimony showing no claim of severe impairments of the spine or neurological function). Thus, record evidence did not "clearly generate[] an issue" that would implicate a need for the ALJ to evaluate Listing 1.15 for Disorders of the Spine, or any Neurological Listings in 11.00. *See Cobb*, 770 F. Supp. 2d at 170 (citing *Wells v. Astrue*, No. 02-cv-1357, 2009 WL 2338047, at *7 n.5 (D.D.C. July 30, 2009)) (remanding when "[d]espite having just concluded that the plaintiff's severe impairments [] included arthritis, back

---

[2] Mr. Toney had severe impairments related to stomach and digestive issues, breathing problems, fracture of bones, hearing loss, arthritis, and mood and anxiety disorders. *See* AR 16. These other impairments need not be addressed because plaintiff did not have severe spinal or neurological impairments, which is the primary issue here. Step three only "requires the ALJ to perform a listing comparison for the *relevant* severe impairments." *See Cobb v. Astrue*, 770 F. Supp. 2d 165, 170 (D.D.C. 2011) (emphasis added).

9

and neck pain, and depression, the ALJ's decision only analyzed whether the plaintiff's mental impairment—i.e., depression—met the criteria for a listed impairment") (internal quotations omitted).

### B. The ALJ's Evaluation of Mr. Toney's RFC

The RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). When determining the RFC, the ALJ "must build a 'logical bridge' from the evidence to his conclusion." *Banks v. Astrue*, 537 F. Supp. 2d 75, 84 (D.D.C. 2008) (quoting *Lane–Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006)). SSR 96-8p, a policy ruling by the SSA, requires the RFC determination to be a "function-by-function" inquiry based on all the relevant evidence of a claimant's abilities and contain a "narrative discussion" that includes supporting evidence, but a written function-by-function analysis is not required. *Id.* at 84–85 (citing *Butler*, 353 F.3d at 1000). "[T]he ALJ must explain how he considered and resolved any 'material inconsistencies or ambiguities' evident in the record . . . ." *Id.*

#### 1. *Weighing Mr. Toney's Testimony*

A claimant's "[s]tatements about . . . symptoms will not alone establish that [he was] disabled. There must be objective medical evidence from an acceptable medical source that shows [he] ha[d] a medical impairment(s) which could reasonably be expected to produce the . . . symptoms alleged." 20 C.F.R. § 416.929(a). Whenever the claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a credibility finding of the claimant's statements "based on a consideration of the entire case record." SSR 96–7P, 1996 WL 374186 (July 2, 1996). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make

clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Butler*, 353 F.3d at 1005 (quoting SSR 96–7p, 1996 WL 374186 (July 2, 1996)).

The ALJ considered evidence of both physical and mental limitations of the Plaintiff in the RFC determination. *See* AR 20–25.  The ALJ considered the Plaintiff's statements regarding his symptoms and the extent to which those symptoms could be reconciled by the objective medical evidence. *See* AR 20–21, 23, 26.  The ALJ then built a "logical bridge" to his determination that the record did not support the Plaintiff's statements regarding his symptoms beyond the consultative examiners' findings. *See* AR 20–21, 23, 26; *Banks*, 537 F. Supp. 2d at 84–85 (affirming ALJ's decision because "the ALJ explained why he discounted certain opinions and provided a 'logical bridge' between the evidence and his conclusion, [thus] he met the standards required under SSR 96–8p."). The ALJ referred to medical records showing the lack of complication in Plaintiff's recovery from treatment of his diverticulitis, that Plaintiff had normal muscle strength and could walk without a cane, and that Plaintiff's breathing and mental health difficulties were non-severe. *See* AR 23–24 (citing AR 544–46, 895, 941, 943 (showing uncomplicated diverticulitis treatment); then citing AR 343, 369, 408, 495, 535, 541, 770, 889, 898, 928, 943, 959, 968, 974, 985 (showing normal muscle strength and gait); then citing AR 662 (showing non-severe breathing difficulties); and then citing AR 525–26 (showing non-severe mental health difficulties)).

The ALJ also discussed how the record failed to show physical or mental limitations beyond the consultative examiner's findings despite the Plaintiff's testimony to the contrary. *See* AR 21–23. "[T]he ALJ . . . found that Plaintiff's statements as to the intensity, persistence, and limiting effects of those symptoms were 'not entirely consistent' with the record evidence." *Jamil*

*D. v. Kijakazi*, No. 21-cv-464, 2022 WL 910334, at *6 (D.D.C. Mar. 29, 2022) (citation omitted). For example, the ALJ explained that the record showed Plaintiff's strength and gait to be normal, even though Plaintiff claims they were not. *See* AR 23 (citing AR 343, 369, 408, 495, 535, 541, 770, 889, 898, 928, 943, 959, 968, 974, 985). The ALJ's reliance on the consultative examiner's report provided the necessary specific reason to discount plaintiff's testimony. *See Jamil D.*, 2022 WL 910334, at *6 (upholding the ALJ's RFC determination contrary to the plaintiff's statements regarding his symptoms where the ALJ considered record evidence, the plaintiff's statements, and consulting physician opinions).

Despite determining that Plaintiff's arthritis was a severe impairment, *see* AR 16, the ALJ noted that the consultative examiner's report found his cane to be medically unnecessary—again contrary to Plaintiff's statements. *See* AR 22–23. The medical records reveal that Plaintiff could walk without a cane and needed no help changing for the consultative examination or getting on and off the exam table. *See* AR 486. The ability to walk without a cane is a sufficient, specific reason to discount plaintiff's testimony to the contrary. *See Mann*, 284 F. App'x at 571 (affirming the ALJ's determination that, based on the consultative physician's findings and contrary to the plaintiff's testimony, the plaintiff could walk without a cane). Thus, the ALJ properly considered and explained the weight he gave to the medical evidence in the record. *See* AR 25–26; SSR 96-7P, 1996 WL 374186 (July 2, 1996).

    2.    *Weighing the Evidence and Opinions from Treating Providers*

The ALJ must give a treating physician's opinion "'controlling weight' if [the opinion is] not inconsistent with other substantial record evidence and [is] well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Butler*, 353 F.3d at 1003. An ALJ who rejects a treating physician's opinion must "explain his reasons for doing so." *Williams v. Shalala*,

12

997 F.2d 1494, 1498 (D.C. Cir. 1993) (citing *Simms v. Sullivan*, 877 F.2d 1047, 1052–53 (D.C. Cir. 1989)).

The ALJ considered the opinions and evidence of treating providers, including Dr. Williams, when determining the RFC. *See, e.g.*, AR 22–23. The treating providers offered opinions that were consistent with the ALJ's determinations. *See, e.g.*, AR 25 (citing AR 296, 343, 369, 408, 495, 525–32, 535, 541, 770, 889, 898, 928, 943, 959, 968, 974, 985) (treating provider records showing that Plaintiff's diverticulitis resolved with treatment, and Plaintiff had normal strength and gait allowing him to walk without a cane). The treating providers' records cited by Plaintiff do not indicate limitations beyond the ALJ's findings. *See* Pl.'s Reply at 2, ECF No. 21 (citing AR 21–26, 44–46, 50–54, 293–99, 336–38, 420, 449–52, 484, 487, 526–29, 546–47, 812–23, 877, 933–35, 953–59, 967, 972–77, 983–88).

Additionally, the ALJ explained that the consultative examiners' opinions were persuasive because of their depth of analysis and consistency with other record evidence. *See* AR 25. Specifically, the ALJ compared the consultative examiner's opinions to underlying medical records from treating physicians, including as to uncomplicated diverticulitis treatment, normal gait and muscle strength, and non-severe difficulties in plaintiff's breathing and mental health. *See* AR 25–26. The treating physicians' records were largely consistent with the consultative examiners' findings, which the ALJ highlighted. *See, e.g.*, AR 25–26 (citing AR 296, 343, 369, 408, 495, 525–32, 535, 541, 770, 889, 898, 928, 943, 959, 968, 974, 985). For example, the ALJ discussed how the "treatment records consistently noted the claimant retains normal muscle strength and normal gait and station without the use of any assistive device," consistent with the consultative examiner's opinion. *Compare* AR 23, 26 (citing medical records from treatment providers finding that Plaintiff had normal gait and strength) *with* AR 484–88 (consultative

examiner report finding the same). Further, the ALJ found that the psychiatric consultative examiner's finding of only mild to moderate mental health limitations was consistent with the medical record, citing both Plaintiff's infrequent treatment and self-reported capabilities "including his ability to utilize public transportation, shop in stores, and manage his finances independently." *See* AR 25 (explaining Plaintiff's self-reported activities); AR 525 (explaining that Plaintiff reported no current psychiatric treatment and one previous psychiatric hospitalization as a child of which there is no record). Accordingly, there were no "'material inconsistencies or ambiguities' evident in the record" for the ALJ to explain. *Banks*, 537 F. Supp. 2d at 84.

      C.      <u>Constitutionality of the SSA Commissioner's Removal Restriction</u>

It is undisputed that the SSA Commissioner's for-cause removal provision violates the constitutional separation of powers. *Constitutionality of the Comm'r of Soc. Sec.'s Tenure Prot.*, 2021 WL 2981542 (O.L.C. July 8, 2021). This Circuit has not addressed the SSA Commissioner's for-cause removal restriction; however, many other courts have rejected these claims for lack of compensable harm. *See Juliana Jolean A. v. Kijakazi*, No. 5:20-cv-1268, 2022 WL 595361, at *4 (N.D.N.Y. Feb. 28, 2022); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) (upholding the ALJ's decision where there was no showing of compensable harm caused by the unlawful provision); *Brinkman v. Kijakazi*, No. 2:21-cv-00528, 2021 WL 4462897, at *2 (D. Nev. Sept. 29, 2021) ("Plaintiff has not shown that whether the President could remove the SSA Commissioner without limitations . . . impacted the independence of the ALJ or his decision in Plaintiff's case."); *Perez-Kocher v. Comm'r of Soc. Sec.*, No. 6:20-cv-2357, 2021 WL 6334838, at *5 (M.D. Fla. Nov. 23, 2021) (finding no showing of compensable harm where plaintiff did not allege any direct action by former Commissioner or any involvement, or even awareness, by the former President of the ALJ's decision). Plaintiff has failed to identify any social security cases

that reached a contrary result. *See* Pl.'s Mot. at 10–11. Further, "Plaintiff has not alleged any connection between the removal restriction and the unfavorable decision denying [his] claim for benefits. [He] therefore has not alleged that the unconstitutional removal restriction itself inflicted compensable harm." *Juliana Jolean A.*, 2022 WL 595361, at *4 (citing *Collins v. Yellen*, 141 S. Ct. 1761, 1789 (2021)); *see* Pl.'s Mot. at 10–11. Accordingly, Plaintiff has not shown that the for-cause removal restriction caused him harm, as required under *Collins*. *See* 141 S. Ct. at 1787–89.

## IV.  CONCLUSION

For the reasons stated above, the Court will DENY the Plaintiff's Motion for Judgment on the Pleadings, and GRANT the Defendant's Motion for Judgment of Affirmance.

Date: August 1, 2022

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE